**NOT FOR PUBLICATION**

```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
                                        :
UNOVALORES LTD.,                        :   CIVIL ACTION NO. 05-5859 (MLC)
                                        :
        Plaintiff,                      :   MEMORANDUM OPINION
                                        :
        v.                              :
                                        :
PHILLIP R. BENNETT,                     :
                                        :
        Defendant.                      :
                                        :
```

**COOPER, District Judge**

The defendant, Phillip R. Bennett, removed this action from New Jersey state court. The plaintiff, Unovalores Ltd. ("UVL"), moves to remand. (Dkt. entry no. 4.) Bennett separately cross-moves to (1) dismiss the complaint, or (2) transfer the action to the United States District Court for the Southern District of New York ("SDNY"). (Dkt. entry nos. 9, 11.) The Court, without oral hearing and on the papers, will (1) grant the motion, (2) deny the separate cross motions without prejudice, and (3) remand the action. See Fed.R.Civ.P. 78.

                          BACKGROUND

**I.    The Parties**

UVL is incorporated in the British Virgin Islands with its principal place of business in Venezuela. (Compl., at 1; Rmv. Not., at 4; Def. Reply Br., at 5 n.2) Bennett was (1) chairman, chief executive officer, and president of Refco, Inc. ("RFI"), and (2) assuming, arguendo, that the facts asserted in the complaint

are true, in control of Refco Capital Markets, Ltd. ("RCM"). (Compl., at 1-2.)  The parties dispute whether Bennett is deemed a citizen of the United Kingdom or New Jersey, as he may be a permanent resident alien and domiciled in New Jersey.  (Rmv. Not., at 4; Pl. Mot. Br., at 1, 4-6, 15; Def. Br. in Support of Cross Mot. to Dismiss, at 2-3, 19; Def. Br. in Opp. to Mot. & in Support of Cross Mot. to Transfer ("Opp. & Trfr. Br."), at 8, 10 n.4, 20-21; Pl. Reply Br., at 2-3, 9.)

**II. Indemnification Agreement**

RFI indemnified their officers in civil actions brought against them in that capacity "if [they] acted in good faith and in a manner [they] reasonably believed to be in, or not opposed to, the best interests of [RFI]."  (Silverstein Decl., Ex. 14, Amended Cert. of Inc., at Art. 6.)  Also, Bennett's employment agreement with RCM provided that he would be indemnified if he acted "in good faith" and "in a manner reasonably believed to be within the scope of [his] authority," but would be liable for his own "gross negligence or willful misconduct." (Id., Ex. 15, Empl. Agmt., at 12, ¶ 11; id., Ex. 16, Company Agmt., at 4-5, ¶ 19.)

**III. Events Preceding Action**

UVL "opened an account" at RCM, and then "entered into a repurchase transaction" with it in August 2005. (Compl., at 2.) UVL is not a shareholder of RFI or its affiliates.  (Pl. Reply Br., at 18.)

UVL and RCM had an agreement with a provision discussing the proper venue for resolving disputes arising from the repurchase transaction ("Venue Provision").  Bennett argues that the Venue Provision provided that (1) the New York federal and state courts in Manhattan "have jurisdiction to settle any disputes which may arise out of or in connection with this Agreement," and (2) a "suit, action or proceedings arising out of or in connection with this Agreement commenced by [UVL] may only be brought in New York."  (Opp. & Trfr. Br., at 6-7.)  In contrast, UVL argues that the Venue Provision stated that the parties "submit to the non-exclusive jurisdiction of courts located in the Borough of Manhattan in New York City."  (2d McCarthy Aff., at 4.)

RFI, in October 2005, "admitted that for several years it had been carrying an undisclosed receivable . . . in the amount of $430 million from an entity controlled by Bennett and that Bennett had been hiding that the undisclosed receivable actually was bad debt and that he . . . controlled the obligated entity." (Compl., at 4.)  Bennett was charged "with criminal securities fraud" soon thereafter.  (Id.)  As "a result of Bennett's actions, [RFI] and [RCM] filed for bankruptcy protection" in the United States Bankruptcy Court for the SDNY under Chapter 11 of the Bankruptcy Code.  (Id. at 5; Rmv. Not., at 2-3; Pl. Mot. Br., at 14-15.)  RFI and RCM have listed Bennett as a "potential indemnification obligation" on their schedules of creditors

holding unsecured, nonpriority claims.  (Silverstein Decl., Ex. 8, RFI Pet., Ex. F-3; id., Ex. 10, RCM Pet., Ex. F-5.)

UVL "attempted unsuccessfully to withdraw its holdings from its account at [RCM] and has demanded unsuccessfully that [RCM] sell back to [UVL] a bond or bonds equivalent to the [UVL] Bonds."  (Compl., at 5.)

**IV.   This Action**

UVL brought this action against Bennett — not RFI or RCM — in New Jersey state court for a writ of attachment of his real and personal property in New Jersey, as well as to recover damages for (1) fraud under state law, (2) violations of N.J.S.A. §§ 2C:41-2(c) and 2C:41-2(d), (3) breach of fiduciary duty, and (4) tortious interference with contract.  (Id. at 5-15.)

Bennett removed the action under 28 U.S.C. § ("Section") 1332(a), and Section 1334(b) on the ground that it is "related to" the RFI and RCM bankruptcy cases.  (Rmv. Not., at 2.)  UVL now moves to remand for lack of jurisdiction.[1]

---

[1] The Court has jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  This dispute centers on related-to jurisdiction.  (Pl. Mot. Br., at 11-13; Opp. & Trfr. Br., at 10-18).  The Court will not discuss (1) arising-under or arising-in jurisdiction, or (2) the "core/ non-core dichotomy" concerning whether a bankruptcy court has jurisdiction.  New Knight, Inc. v. Nat'l Wire & Metal Techs. (In re New Knight, Inc.), 291 B.R. 367, 370 n.1 (Bankr. E.D. Pa. 2003).

**DISCUSSION**

**I.   Sections 1332(a) and 1441(b)**

    **A.   Bennett as citizen of United Kingdom**

There is no jurisdiction under Section 1332(a) in an action between one plaintiff and one defendant if both parties are citizens of, among other places, the same foreign state. <u>Grupo Dataflux v. Atlas Global Group</u>, 541 U.S. 567, 569 (2004) (stating requisite diversity absent, and thus jurisdiction lacking, where plaintiff and defendant both deemed citizens of, among other places, Mexico); <u>Gen. Tech. Applics. v. Exro Ltda.</u>, 388 F.3d 114, 122 n.5 (4th Cir. 2004) (stating <u>Grupo</u> majority and dissenting opinions recognized aforementioned jurisdictional defect).

UVL — as it is incorporated in the British Virgin Islands ("BVI") — is a citizen of, among other places, the United Kingdom. <u>See</u> 28 U.S.C. § 1332(c)(1); <u>JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastr.</u>, 536 U.S. 88, 100 (2002) (stating United Kingdom's retention and exercise of authority over BVI renders BVI citizens, both natural and juridic, citizens or subjects of United Kingdom under Section 1332(a)).  Thus, the Court would lack jurisdiction under Section 1332(a) here if Bennett were to be deemed a citizen of the United Kingdom, as UVL also is a citizen of the United Kingdom.

5

### B. Bennett as citizen of New Jersey

An action that could have been brought in federal court under Section 1332(a) is removable from state court only if no defendant is a citizen of the state in which such action is brought. 28 U.S.C. § 1441(b); Bor. of W. Mifflin v. Lancaster, 45 F.3d 780, 785 (3d Cir. 1995) (stating "[u]nder § 1441(b) diversity cases have an additional obstacle to removal: a resident defendant is barred from removing to federal court").

Bennett may be "an alien admitted to the United States for permanent residence," and thus "deemed a citizen of the State in which [he as an] alien is domiciled," i.e., New Jersey. 28 U.S.C. § 1332(a) (quotes from unnumbered final paragraph). Thus, if Bennett were deemed to be a New Jersey citizen — and as UVL raised an objection under Section 1441(b) (Pl. Mot. Br., at 4-7) — Section 1441(b) would bar removal of this action to this Court sitting in New Jersey. See Enviro-Gro Techs. v. Greeley & Hansen, 794 F.Supp. 558, 560 (E.D. Pa. 1992) (stating Section 1441(b) limits right of removal where in-state defendant is party even though diversity of citizenship exists).

### C. Bennett as Dual Citizen

"Because of the final paragraph of § 1332, some aliens will have two 'citizenships' for diversity purposes rather than one: that of their home country, and that of the U.S. state in which they are domiciled." Karazanos v. Madison Two Assocs., 147 F.3d

6

624, 628 (7th Cir. 1998). The Court would lack jurisdiction under Section 1332(a) if Bennett were deemed to be a citizen of both New Jersey and the United Kingdom, as either complete diversity would be lacking or removal would be barred. (See Disc., I.A-B, supra.) [2]

## II.  Section 1334

### A.  Related-To Jurisdiction under Section 1334(b)

#### 1.  Law

The Court has related-to jurisdiction under Section 1334(b) — even if an action is not (1) within the bankruptcy process, (2) invoking rights under the Bankruptcy Code, or (3) brought against the debtor — if "the outcome of that [action] could conceivably have any effect on the estate being administered in bankruptcy," such as altering the debtor's rights or liabilities, or impacting the administration of the estate. Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). But "[t]he test articulated in Pacor for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the

---

[2] Bennett does "not address [his] secondary basis for subject matter jurisdiction under 28 U.S.C. § 1332" because he argues that he "show[s that] the Court's subject matter jurisdiction under § 1334 is clear." (Opp. & Trfr. Br., at 10 n.4.) Nonetheless, the Court examines all jurisdictional possibilities raised by the parties at any point. See 28 U.S.C. § 1447(c); Fed.R.Civ.P. 12(h)(3).

7

intervention of yet another lawsuit." In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002).[3]

### 2.   **Indemnification**

The Court does not necessarily have related-to jurisdiction over an action involving a non-debtor party who may seek indemnification from a bankruptcy debtor. Id. The Court lacks related-to jurisdiction, even if there is an indemnification agreement between the non-debtor and debtor, if the non-debtor's recovery is contingent upon an outcome in a subsequent action for indemnification. Pacor, 743 F.2d at 995-96; see Steel Workers Pension Trust v. Citigroup, Inc., 295 B.R. 747, 750, 753 (E.D. Pa. 2003); see also In re Allegheny Health, Educ. & Research Found., 383 F.3d 169, 175 n.7 (3d Cir. 2004) (noting related-to jurisdiction exists over action for indemnification from debtor if indemnity claim "has already matured").

### 3.   **Jurisdiction here**

The courts within the Third Circuit have reached differing results in assessing whether there is related-to jurisdiction over an action brought against an officer of a debtor-company, which previously agreed to indemnify the officer if the officer acted in good faith and in a manner reasonably believed to be in

---

[3] Pacor appears to be overruled in part on other grounds. See, e.g., In re Velocita Corp., 169 Fed.Appx. 712, 715 (3d Cir. 2005) (noting overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995)). But see In re Federal-Mogul, 300 F.3d at 381 (stating "Pacor clearly remains good law in this circuit").

the company's best interests.  Compare, e.g., IUE-CWA Pension Fund v. Piccirilli (In re Pitt. Brewing Co.), No. 05-50347, 2006 WL 1666210, at *1-*3 (Bankr. W.D. Pa. June 9, 2006) (stating no jurisdiction in action against officer, where debtor's bylaws had good-faith-and-best-interests provision, as bylaws gave "only qualified, that is not absolute, indemnification," and "litigation subsequent to an adverse resolution of such action will be necessary before a determination can be made that there exists such liability on the Debtor's part"), with Hohl v. Bastian, 279 B.R. 165, 172, 175 (W.D. Pa. 2002) (finding jurisdiction in action where bylaws had good-faith-and-best-interests provision).

    The Court determines that there is related-to jurisdiction here under Section 1334(b).  See Belcufine v. Aloe, 112 F.3d 633, 636 (3d Cir. 1997) (affirming order determining jurisdiction existed due to provision imposing affirmative obligation on company to indemnify officer in legal proceeding; stating "Pacor specifically notes that contractual indemnity claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of 'related to' jurisdiction").  The Court does so in an excess of caution, and in view of the Court's determination, infra, that the motion can be granted on another ground.[4]

---

[4] UVL argues that Section 1441(b)'s bar against an in-state defendant removing also applies to claims related to bankruptcy matters under Section 1452(b). (Pl. Mot. Br., at 8-10; Pl. Reply Br., at 5-9.)  "Whether this is so is an interesting question," but not settled.  Belcufine, 112 F.3d at 638.  The Court will not address it here.

9

### B. Mandatory Abstention under Section 1334(c)(2)

#### 1. Law

The Court upon a timely motion — even if jurisdiction exists under Section 1334(b) — must abstain from exercising jurisdiction if the action is (1) based on a state law cause of action, (2) solely "related to" a Title 11 case, (3) one where the Court would not have jurisdiction but for its relation to a bankruptcy case, (4) commenced in a state forum of appropriate jurisdiction, and (5) one that can be timely adjudicated in the state forum. 28 U.S.C. § 1334(c)(2); Stoe v. Flaherty, 436 F.3d 209, 213 (3d Cir. 2006). "On its face, [Section 1334(c)(2)] mandates abstention in removed cases as well as those filed initially in federal court." Id. at 214. Bennett contests the fourth and fifth elements only. (Opp. & Trfr. Br., at 22-26.)

#### 2. Abstention here

##### a. First, second, and third elements

The causes of action are based on state law. The action is related to a Title 11 case. Jurisdiction is lacking under Section 1332(a), and Bennett fails to address Section 1332(a) when discussing mandatory abstention. (See Disc., I.A - I.C, supra.; Opp. & Trfr. Br., at 10 n.4, 21-26). Thus, the first, second, and third elements of mandatory abstention are present.

##### b. Fourth element of mandatory abstention

The New Jersey state court, contrary to Bennett's argument, is an appropriate jurisdiction. (See Opp. & Trfr. Br., at 25-26.)

First, UVL seeks to attach Bennett's New Jersey property. Second, the Venue Provision cannot affect the state court's jurisdiction, as "venue and subject-matter jurisdiction are not concepts of the same order. . . . Subject-matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases [and is] a matter far weightier than venue." Wachovia Bank v. Schmidt, 126 S.Ct. 941, 950 (2006). Many courts will have jurisdiction, and "it is possible, and even likely, that only a smaller subset will properly have venue." Wall St. Aubrey Golf v. Aubrey, No. 05-5027, 2006 WL 1525515, at *4 (3d Cir. June 5, 2006) (stating venue is distinct from jurisdiction, and jurisdiction is presumed before addressing if venue is proper). Third, the Venue Provision was agreed upon by UVL and RCM, not UVL and Bennett, and Bennett has provided no case law showing that he is protected by the Venue Provision. Thus, UVL has demonstrated that the fourth element is present. See Alexander v. Cintas Corp. (In re Terry Mfg. Co.), 324 B.R. 147, 153 (Bankr. M.D. Ala. 2005) (stating forum-selection clause has no effect on whether state court is appropriate jurisdiction under Section 1334(c)(2)).

### c. Fifth element of mandatory abstention

UVL's counsel affirms in support of the fifth element that:

> [i]t has been my experience, and the experience of my co-principal . . . that an action in New Jersey State Court will proceed to trial at the same rate as an action in [the New Jersey District] Court. This action

11

> involves only two parties and implicates issues of state law that the State Court is well-suited to adjudicate.

(1st McCarthy Aff., at 3.)  Counsel affirms further that:

> I spoke to a clerk of the [relevant state court] about the average length of time it takes to bring a case to trial. . . . The clerk advised us that the [state court] did not keep statistics of the average length of time from commencement to disposition of an action filed in that Court. However, the clerk [on reviewing the docket] advised that given the standard discovery track that would be assigned this case, the parties could reasonably expect a trial date within thirteen months after a remand. That response is consistent with the experiences that [my co-principal] and I have had in the New Jersey state courts.

(2d McCarthy Aff., at 2-3.)  This is sufficient to demonstrate the presence of the fifth element.

Bennett argues in response that (1) the time frame in state court for resolution of UVL's claims, in light of the RCM and RFI bankruptcy matters, will be uncertain, (2) the action will be duplicative of the bankruptcy proceedings and the many shareholder actions in the district court for the SDNY, and thus "slow down" all related proceedings, (3) "there are no Refco-related lawsuits, other than this one, pending outside the [SDNY]," and (4) the claims would not be "fairly" adjudicated in state court.  (Opp. & Trfr. Br., at 4, 23-24.)

The response is unconvincing.  As UVL is not a shareholder, and its claims are different from those Bennett referenced, these New Jersey state law claims can be more efficiently overseen by a New Jersey state court.  See Woods v. Passodelis (In re

Passodelis), 234 B.R. 52, 64 (Bankr. W.D. Pa. 1999) (finding mandatory abstention appropriate); McCormick v. Kochar, No. 99-5045, 1999 WL 1051776, at *1 (E.D. Pa. Nov. 19, 1999) (same). Entry of a state-court judgment on damages against Bennett may be delayed, or offset by, UVL's recovery from RCM or RFI for its loss, but that will not affect a determination on Bennett's liability here.  In any event, the issue "is not whether the action would be more quickly adjudicated in [federal court] than in the state court, but rather, whether the action can be timely adjudicated in the state court."  Trans World Airlines v. Icahn (In re Trans World Airlines), 278 B.R. 48, 51 (Bankr. D. Del. 2002) (emphasis in original) (finding mandatory abstention appropriate).  Indeed, the state court has been unable to timely adjudicate this action because Bennett removed it.  UVL thus has demonstrated that all five elements of mandatory abstention are present.

**CONCLUSION**

The Court, as the plaintiff has demonstrated that all of the elements of mandatory abstention are present, will not address discretionary abstention and equitable remand under Section 1334(c)(1).  (See Pl. Mot. Br., at 16-17; Opp. & Trfr. Br., at 26-29; Pl. Reply Br., at 22.)  Thus, the Court will grant the motion to remand on the grounds that the Court (1) lacks jurisdiction under Section 1332(a), and (2) must abstain under

Section 1334(c)(2).  The Court also will deny the separate cross motions without prejudice to seeking similar relief in another court, e.g., state court, and (3) remand the action.  The Court will issue an appropriate order and judgment.[5]

                                            s/ Mary L. Cooper
                                         **MARY L. COOPER**
                                          United States District Judge

---

[5] UVL did not seek an award for costs and expenses expended on the motion to remand.  See 28 U.S.C. § 1447(c).  The Court would not have been inclined to grant such relief in its broad discretion, as the issues here under Section 1334 are replete with uncertainty and complexity.  See Mints v. Educ. Testing Serv., 99 F.3d 1253, 1260 (3d Cir. 1996).